IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD D REICHART,
:
: Plaintiff
:
: CIVIL NO. 1:CV-11-1992
vs.
:
: (Judge Caldwell)
PRISON HEARLTH SERVICES, SCI-
CAMP HILL, *et al.*,
:
: Defendants

*M E M O R A N D U M*

I. *Introduction*

The pro se plaintiff, Richard D. Reichart, an inmate formerly housed at SCI-Camp Hill in Camp Hill, Pennsylvania, filed this civil-rights action charging that defendants' negligence and deliberate indifference to his medical care led to the permanent loss of vision in his left eye.[1] Named as defendants are Prison Health Services (PHS), the contract medical care providers at SCI-Camp Hill; Dr. Brent, the ophthalmologist who performed Reichart's cataract surgery, and his employer, Premier Eye Care Group.[2]

The defendants have independently moved for summary judgment based on a number of reasons, including Reichart's alleged failure to exhaust his administrative remedies and his failure to file a Certificate of Merit as required by Pa. R. Civ. P. 1042.3 in support of his medical malpractice claims against Dr. Brent. *See* Docs. 59 and 61. Reichart has filed a brief in opposition to defendants' motions and several supplemental

---

[1] Reichart is presently housed at SCI-Houtzdale in Houtzdale, Pennsylvania.

[2] Dr. Brent and the Premier Eye Care Group are represented by the same counsel and PHS has separate counsel.

responses asking the court to consider additional arguments and exhibits. *See* Docs. 62, 69, 71, and 77.[3]  For the reasons that follow, the defendants' motions for summary judgment will be granted.

II.  *Standard of Review*

Fed. R. Civ. P. 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Haybarger v. Lawrence Cnty. Adult Prob. & Parole,* 667 F.3d 408, 412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 2510, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

At summary judgment the moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  *See Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).  Under Fed. R. Civ. P. 56(e), the opposing party

---

[3]  Documents 71 and 77 are both captioned "Motions to Supplement."  Reichart did not file a brief in support of either motion.  Thus, they could be denied pursuant to Local Rule 7.5. Nonetheless, given Reichart's *pro se* status, the court will consider the arguments and documents presented in each in conjunction with his opposition to defendants' motions for summary judgment.

-2-

must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

III. *Background*

    A. *Allegations of the Amended Complaint*

Plaintiff commenced this civil-rights action on October 17, 2011. (Doc. 1, Compl.) At all times relevant to this action, Reichart was housed at SCI-Camp Hill. (*Id.*) PHS is the contract health-care provider at SCI-Camp Hill. (*Id.*)

Reichart takes anticoagulants (blood thinners) for an undisclosed medical condition. (Doc. 46, Am. Compl.) He alleges that PHS was deliberately indifferent to his serious medical needs when it failed to maintain adequate policies and procedures to ensure that medical tests for inmates with chronic diseases were timely reviewed, and acted upon, by its staff. (*Id.*, ECF p. 2). As a result of this absence of policy and custom, his anticoagulant blood levels were outside of recommended therapeutic levels between March 14, 2011, and December 5, 2011. (*Id.*, ECF p. 4). He also claims PHS failed to evaluate or convey his irregular lab results to Premier Eye Care before sending him for cataract surgery, thus exposing him to a significant risk of complications during surgery. (*Id.*)

-3-

In 2011, Reichart noticed a change in his vision and sought reading glasses. (*Id.*) After being evaluated at SCI-Camp Hill, he was advised that he had bilateral cataracts and would be referred to an outside specialist for cataract surgery. (*Id.*) On June 20, 2011, Reichart was seen by Dr. Brent, an ophthalmologist employed by Premier Eye Care. (*Id.*) On August 18, 2011, Dr. Brent removed Reichart's left cataract. (*Id.*) Reichart never regained sight in his left eye after his surgery. (*Id.*, ECF p. 4). He was told by other medical professionals that the poor outcome of his cataract surgery was due to "restricted blood flow from surgery from [him] having untherapeutic lab results." (*Id.*) Although he has been seen by other ophthalmic specialists, he has been told that due to complications from his first surgery, he will never regain his sight in his left eye. (*Id.*)

Reichart alleges that Premier Eye Care and Dr. Brent were deliberately indifferent to his serious medical needs when they negligently disregarded his physical health by failing to conduct a thorough medical history prior to operating on him. Had they performed such a review, it would have revealed his irregular anticoagulant blood levels. (*Id.*, ECF p. 3).

B.  *Undisputed Facts*[4]

On June 20, 2011, Reichart was seen by Dr. Brent, an ophthalmologist employed by Premier Eye Care. (Doc. 26-2, Portion of Reichart's Medical Record). At the time, the vision in his left eye was 20/400. (*Id.*) Dr. Brent recommended the removal of the cataract in his left eye noting that his vision "should improve as long as retina is healthy."

---

[4] All material facts set forth in defendants' Joint Statement of Material Facts (doc. 67) are deemed admitted as Reichart failed to file a counter-statement as required by M.D. Local Rule 56.1.

(*Id.*)  On August 18, 2011, Dr. Brent removed Reichart's left cataract.  (Doc. 26-3, Dr. Brent's Surgical Note).

The DOC has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement.  (Doc. 67-1, ECF pp. 8-25, DC-ADM 804, *Inmate Grievance System*).  It consists of a three-step process.  (Doc. 67, Defs.'s Jnt. Statement of Undisputed Material Facts (DSMF), ¶ 3).  Step 1 requires an inmate to submit a written grievance to the prison's Grievance Coordinator for initial review within fifteen working days after the occurrence of the event the inmate is grieving.  (DSMF ¶ 4 and ¶ 8).  The inmate's grievance must include a statement of facts relevant to the claim; including the identity of individuals directly involved in the event; any claim he wishes to make; and if so desired, a request for compensation or other relief normally available from a court.  (DSMF ¶ 8).  The Grievance Coordinator then reviews it and assigns it to a Grievance Officer for investigation and response.  (*Id.*)

If an inmate is dissatisfied with the first level response, the inmate has ten working days to utilize Step 2 of the grievance process.  (DSMF ¶ 5 and ¶ 9).  The inmate may file an appeal, addressing only issues raised in his/her initial grievance, to the Facility Manager or Superintendent of the institution.  (DSMF ¶ 5).

If the inmate remains dissatisfied after receipt of the Superintendent's response to the appeal, the inmate has fifteen days from the receipt of the Superintendent or Facility Manager's response to initiate Step 3 by appealing the grievance to the Secretary of the Department of Corrections' Office of Inmate Grievance and Appeals (SOIGA).  (DSMF ¶ 6 and ¶ 10).  An inmate may not seek review by SOIGA until he/she receives a decision from the Superintendent or Facility Manager; and has complied with all

procedures established for the first two steps.  (DSMF ¶ 10).  An inmate submitting an appeal for final review must provide SOIGA with all available paperwork relevant to the appeal, including photocopies of the initial grievance, Initial Review Response/Rejection, the Appeal to the Facility manager and the Facility Manager's decision.  (DSMF ¶ 11). Inmates are required to mail their final appeal to SOIGA and raise only issues appealed to the Facility Manager in Step 2.  (DSMF ¶ 12).

All DOC inmates are provided with a notice of DC-ADM 804 and the associated requirements they must meet in grieving their issues under the same.  (DSMF ¶ 13).  SOIGA maintains a record in the Automated Inmate Grievance Tracking System of inmates' appeals to final review and SOIGA's responses to appeals to final review.  (DSMF ¶ 14).  Tracy Williams is an Administrative Officer 3 who reviews inmate grievance appeals to SOIGA pursuant to DC-ADM 804.  (DSMF ¶ 4).  Officer Williams searched the Automated Inmate Grievance Tracking System for grievances concerning Reichart's loss of vision in his left eye following cataract surgery performed on August 18, 2011, due to improper management of his anticoagulant therapy at or around the time of his surgery.  (DSMF ¶ 16).  Officer Williams identified four grievances that appear to relate factually to the issues raised in his Amendment Complaint: 389396, 389071, 381094 and 384855.  (DSMF ¶ 17).  Officer Williams affirms that none of the identified grievances were appealed to final review as required by DC-ADM 804.  (DSMF ¶ 18).

Reichart filed grievance 381094 on August 27, 2011.  (Doc. 67-1, ECF p. 33 and Doc. 75-1, ECF p. 1).  In his grievance, he notes that following his cataract surgery in his left eye he is now blind "due to a bad operation."  (*Id.*)  He requested to be seen by another eye doctor to see if anything could be done to restore his sight.  (*Id.*)  On

September 19, 2011, Corrections Healthcare Administrator (CHCA) Law denied Reichart's grievance noting that he was grieving the "clinical outcome" of his surgery. (Doc. 67-1, ECF p. 34 and Doc. 75-1, ECF p. 2). However, believing his complaint needed further evaluation, she scheduled him to be seen by the institution's Optometrist the following week. (*Id.*) Reichart acknowledges that his grievance was denied. (Doc. 75-1, ECF p. 8).

On October 6, 2011, Reichart filed grievance 384855. (Doc. 67-1, ECF p. 36 and Doc. 75-1, ECF p. 3). He recites the same issues raised in grievance 381094. *Compare* Doc. 67-1, ECF p. 33 and p. 36. He notes that he was seen by SCI-Camp Hill's Optometrist on October 5, 2011. (*Id.*) He argues that this is his second grievance on the same subject matter that he has "put in, [and he has] not received anything back on the first one."[5] (*Id.*) SCI-Camp Hill's Grievance Coordinator rejected grievance 384855 on October 13, 2011, as duplicative to grievance 381094. (*Id.*, ECF p. 37 and Doc. 75-1, ECF p. 4).

On November 6, 2011, Reichart filed grievance 389396. (Doc. 67-1, ECF p. 27 and Doc. 75-1, ECF p. 5). In this grievance, Reichart notes that after having cataract surgery on his left eye almost four months ago, he has no vision in the eye. (*Id.*) He says that he "was told that [he] lost [his] eye sight because of restricted blood flow during the operation." (*Id.*) Reichart was expecting to have further evaluations of his left eye but instead learned that he was scheduled for cataract surgery on his right eye. (*Id.*) He refused to go with the escorting officer and refused surgery on his remaining good eye until the problems with this left eye were resolved. (*Id.*) He asks that the Corrections Health

---

[5] Although Reichart states he did not receive "anything back from the first one," he later lists the dates of all grievances he has filed regarding his cataract surgery, including the one on August 27, 2011, and notes that "SCI Camp Hill keeps denying my grievances . . ." *See* Doc. 75-1, ECF p. 8.

-7-

Care Administrator (CHCA) make the necessary arrangements for him to be seen again by Premier Eye Care "to finish and correct" the problems with his left eye. (*Id.*)

On November 11, 2011, Reichart filed grievance 389071. (Doc. 67-1, ECF p. 30 and Doc. 75-1, ECF p. 6). He again recites his refusal to consent to cataract surgery on his right eye because he wants to go back to Premier Eye Care, which arranged for him to have an MRI to see if anything could be done to restore the sight in his left eye. (*Id.*) He also reports that "all the eye doctors" he has seen post-surgically have told him that "due to restricted blood flow to his eye during surgery is the reason [he] went blind." (*Id.*) He also notes his treating physician at the prison told him that his anticoagulant blood levels have "not been close to normal" since his arrival at SCI-Camp Hill. (*Id.*) He then questions why he was sent out for surgery when this information was known by his treating doctor. (*Id.*)

On November 22, 2011, CHCA Law issued Reichart an initial response to grievances 389071 and 389396. (Doc. 67-1, ECF p. 31 and Doc. 75-1, ECF p. 7). CHCA Law advised him that Optometrist Weyand had educated Reichart on the risks involved prior to his cataract surgery and that he had consented to have the procedure done. (*Id.*) She also commented that he had refused to attend his November 4, 2011, appointment at Premier Eye Care for post-surgical care. (*Id.*) Reichart did not appeal CHCA Law's denial of his grievance to final review. (DSMF ¶ 18).

On December 1, 2011, Reichart filed a grievance directly with SOIGA, noting that his previous grievances, filed on August 27, 2011, October 6, 2011, November 6, 2011 and November 11, 2011, had all been denied. (Doc. 75-1, ECF p. 8). He reported that "SCI Camp Hill keeps denying my grievances saying that these are medical problems with clinical outcomes and they refuse to apply their own DOC policies." (*Id.*) As of April 18,

-8-

2012, SOIGA had not responded to Reichart's December 1, 2011, filing. (*Id.*, ECF p. 9). Reichart states he is now "blind because of someone's medical negligence from your prison health care facilities." (*Id.*)

IV. *Discussion*

    A. *Reichart's Failure to Exhaust his Available Administrative Remedies*

Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002); *Small v. Camden Cnty,* No. 11-2378, 2013 WL 4504761, at *2 (3d Cir. Aug. 26, 2013). The exhaustion requirement is mandatory. *See Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). Exhaustion of all available administrative remedies is a precondition to litigation; exhaustion after the suit is filed is insufficient. *Toney v. Bledsoe*, 427 F. App'x 74, 77 (3d Cir. 2011)(nonprecedential) (citing *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003)). "Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant." *Brown v. Croak,* 312 F.3d 109, 111 (3d Cir. 2002).

The exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Failure to substantially comply with the procedural requirements of the applicable and available

prison's grievance system will result in a procedural default of the claim. *Woodford*, 548 U.S. at 90, 126 S.Ct. at 2385; *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). A prisoner cannot bypass available administrative remedies, either by failing to properly exhaust the prison's administrative remedy process, or by waiting until such remedies are no longer available. *Woodford*, 548 U.S. at 95, 126 S.Ct. at 2388. However, if the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement. *Brown*, 312 F.3d at 112-113. "Where [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." *See Small*, 2013 WL 4504761, *6.

   Here, Reichart filed four grievances complaining about the monitoring of his blood levels by PHS before the cataract surgery on his left eye which resulted in his loss of vision. He suggests that his blindness was related to restricted blood flow to the eye during surgery performed by Dr. Brent of Premier Eye Care. It is undisputed that these grievances were filed on the following dates: 08/27/11 (Grev. 381094); 10/06/11 (Grev. 384855); 11/06/11 (Grev. 389396); and 11/11/11 (Grev. 389071). *See* Docs. 67-1, ECF pp. 33, 36, 27, and 30; *see also* Doc. 75-1, ECF pp. 1, 3, 5 and 6. However, defendants assert that Reichart did not properly exhaust his available administrative remedies as to any of these grievances and thus his action is subject to dismissal.

   Initially it is noted that Reichart filed this action on October 17, 2011, per the prisoner mailbox rule. *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Thus any grievances filed after that date, even if properly exhausted pursuant

to DC-ADM 804, would not satisfy the exhaustion requirement of the PLRA. *See Toney*, *supra.* Consequently, we must focus on Reichart's exhaustion efforts with respect to his first two grievances that were filed before he filed his lawsuit: (1) Grievance 381094, filed on August 27, 2011; and (2) Grievance 384855, filed on October 6, 2011. *See* Doc. 75-1, ECF pp. 1 - 4. He received responses or decisions on both. (*Id.*)

The undisputed record before the court reveals that the DOC's grievance policy is set forth in DC-ADM 804 (DSMF ¶ 4), and that Reichart never appealed either of these two grievances to final review before the SOIGA (DSMF ¶ 18). In his opposition responses, Reichart says that he "has attempted on several occasions to file the grievance proceedure (sic) but yet was told that they would not entertain these grievances because it was not a DOC problem, that it was a prison health services problem as can be seen on the responces (sic) that Plaintiff received back from the faciiltator (sic)". (Doc. 69, Mot. in Responce (sic) to Defs. Mot. to Dismiss, ¶ 4A.

Upon review of the specific responses he received to both grievances, the court does not agree with Reichart's assessment. He was not told he "could not" file a grievance on the issue, rather he was told that he appears to be grieving "a clinical outcome, therefore denied." (Doc. 67-1, ECF p. 34 and Doc. 75-1, ECF p. 2). If Reichart was dissatisfied with that response, he had the opportunity to grieve the initial response to the Facility Manager, step 2 of the DOC's grievance process. Thus we do not agree with Reichart that he did "everything in his power to exaust (sic) all of the remedies per (DOC) polocies (sic), however the Department of Corrections have been avoiding the current situation and circumstances of their own procedures." (Doc. 75, Mot. to Extend Deadlines, ¶ E). Reichart states that his "last grievence (sic) that was filed while being housed at SCI

Camp Hill was sent directly to the Chief Office of Appeals." (*Id.*, ¶ 6). This last ditch effort, filed after the initiation of his lawsuit, and directly to the final level of review, skipping steps 1 and 2 of the grievance process, does not substantially comply with the DOC's administrative remedy process.

Reichart does not suggest that he did not receive initial responses to his grievances. The record before the court demonstrates that he received an initial response to each of his grievances. *See* Doc. 75-1, ECF pp. 1-4. He does not suggest that he appealed any of these denials to the second or third level as required by DC-ADM 804 or that if he did file such an appeal, he did not receive a response. *See Small*, *supra*. Accordingly, defendants have affirmatively demonstrated, and Reichart has not disputed, that he did not properly comply with the requirements of DC-ADM 804 as he failed to appeal the denial of any grievances to the second or third level of review.

Based on the undisputed record before the court, Reichart did not exhaust his administrative remedies prior to the filing of his present action. Likewise, he has not demonstrated that prison officials interfered with his ability to exhaust his available administrative remedies or that the DOC's administrative remedy process was unknown or unavailable to him. Accordingly, his claims under 42 U.S.C. § 1983 against PHS, Premier Eye Care Group and Dr. Brent will be dismissed without review of the alternative grounds for dismissal presented in their motions for summary judgment.

### B.    State Law Negligence Claims

The basis for federal question jurisdiction arises from Reichart's claims under 42 U.S.C. § 1983. As discussed above, the claims alleged under § 1983 are being

dismissed. To the extend the Amended Complaint alleges additional claims under state law, the court will not exercise supplemental jurisdiction over those claims, and they too will be dismissed, but without prejudice to filing them in state court. *See Byrd v. Shannon*, 715 F.3d 117, 128 (3d Cir. 2013).

V.   *Conclusion*

For the reasons state above, we will grant the defendants' motions for summary judgment. An appropriate order follows.

/s/ William W. Caldwell  
William W. Caldwell  
United States District Judge

Date: September 5, 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD D REICHART, | : |
| Plaintiff | : |
| vs. | : CIVIL NO. 1:CV-11-1992 |
| | : (Judge Caldwell) |
| PRISON HEALTH SERVICES, SCI-CAMP HILL, *et al.*, | : |
| Defendants | : |

*O R D E R*

AND NOW, this 5th day of September, 2013, in accordance with the accompanying Memorandum, it is ORDERED that:

    1. Defendant, PHS's, Motion for Summary Judgment (Doc. 59) is GRANTED.

    2. The Premier Eye Care Group defendants' Motion for Summary Judgment (Doc. 61) is GRANTED.

    3. Plaintiff's Motion to Supplement (Doc. 71) is GRANTED to the extent the court considered the content of his submission in resolving the Defendants' Motions for Summary Judgment.

    4. Plaintiff's Motion to Extend All Case Management Deadlines (Doc. 75) is GRANTED in part and DENIED in part. It is GRANTED to the extent the court considered the content of his submission in resolving the Defendants' Motions for Summary Judgment.  It is DENIED in all other respects.

    5. Plaintiff's Motion to Supplement (Doc. 77) is GRANTED to the extent the court considered the content of his submission in resolving the Defendants' Motions for Summary Judgment.

    6. The Clerk of Court shall enter judgment in favor of the Defendants and against the Plaintiff.

7. The Clerk of Court shall close this file.

                                              /s/ William W. Caldwell
                                              William W. Caldwell
                                              United States District Judge